THOMPSON v. THOMPSON.

4-8291 208 S. W. 2d 445

Opinion delivered January 19, 1948.

Rehearing denied March 8, 1948.

C. M. Martin, J. R. Wilson and Henry B. Whitley, for appellant.

Streett & Harrell and Gaughan, McClellan & Gaughan, for appellee.

GRIFFIN SMITH, Chief Justice. The question is whether the Court abused its discretion in refusing to reopen a judgment and hear proof in justification of the complaint of maladministration.

When William Thompson died in 1933 he owned 320 acres and a small amount of personal property. He was survived by a widow and eight children. Luther Thompson, a son, qualified as administrator in November 1933. His inventory of August 27th, 1934, lists assets other than land at $771.39. The items included $165.51 in cash, $110.38 in a restricted bank deposit, and various farming implements and stock. The land was thought to be worth $3,200. In addition it is contended that $225 in rents were collected. Three claims were filed: one for $43.48, one for $558.42, and the other for $250—a total of $851.90. Sureties to the administrator's bond were Roy Smith and Dr. S. A. Thompson. Smith is an officer in the corporation claiming $250, while the item of $558.42 was due Dr. Thompson. The claim for $250 was not itemized and was allowed at a time when the statute of limitation was applicable.

In June 1936 the administrator petitioned for authority to sell the lands to pay debts. The viewers returned an appraisement of $5 per acre and the property was bought by Dr. Thompson at a sale held June 27, 1936, the consideration being $1,075. Execution of the deed was approved July 27th of the same year. The administrator's first and final settlement was approved in January 1937, having been filed the previous October. Credit was taken for an amount equal to sale price of the land. There was no mention of the personal property. The record showing these transactions was brought up by *certiorari*.

In July 1941 plaintiffs as the sole surviving heirs of William Thompson alleged that the administrator, in procuring an order to sell land for the payment of debts without disclosing possession of $996.23 in personal assets, practiced a fraud upon the court. It was alleged further that after acquiring the real property Dr. Thompson sold eighty acres—40 by quitclaim deed to Lide Thompson for a consideration of $300, and 40 to Luther Thompson for $200. Each of these parties subsequently obtained quitclaim deeds from others who in these proceedings are plaintiffs. The grantees included in their

pleadings a disclaimer to title and asked that the sum of $500 be treated as a credit on Dr. Thompson's claim against the William Thompson estate. Dr. Thompson died during pendency of the litigation.

There were a great many pleadings, including a motion to dismiss. The Chancellor, as Judge of the Probate Court, delivered a written opinion with his judgment of November 23, 1946. Among other reasons for dismissing the action there was in effect a finding that because of *laches* the plaintiffs should not prevail. But there were also findings that, *prima facie*, the proceedings were regular; that it was sought to impeach what appeared to be valid judgments of a court having jurisdiction of the parties and subject matter. An excerpt from the opinion is: "The record shows that the proposed sale of the real estate was advertised as required by law. It must be presumed that all of the parties knew of all of the details of the proceedings in the Probate Court, and no complaint or question was raised regarding the regularity or legality of said proceedings until the filing of this suit", the order for such sale to pay the debts having been made approximately five years before suit was instituted.

Regarding the allegation that Dr. Thompson did not act in good faith, the opinion says that " . . . the contention is not borne out by any facts, but appears to be based principally upon speculation". It was then said that determination of the charge of fraud in procurement of the judgment directing sale of real property was a question passed upon by the Probate Court. The whole matter, says the opinion, was before that tribunal, and necessity for the sale was a fact adjudicated. There was comment on the widow's right to statutory allowances, with the inference that a presumption of payment would arise, thus reducing by $450 the personal assets. Pope's Digest, §§ 80 and 86.

Some of the personal property was shown to have been "one old wagon, $20; two sets of old gear, $3; one 'middle buster', $6.50; one two-horse turning plow, $6; one 1929 Chevrolet touring car $100", and other imple-

ments of a similar character. Two goats were estimated to be worth $1, and three calves $9. A shotgun and .22 rifle were appraised at $7, a mowing machine at $65, three hogs, four cows, and three 'yearlings' at $79. There are references to evidence or information available to the Court, but not in the record.

We are not able to say that the Court incorrectly found that the allegations of fraud practiced in procurement of the judgments was insufficient, or that it was wrongfully found that delay militated against rights that once existed. If the proceeding were one in Chancery to surcharge and falsify the administrator's settlement because of failure to account for the personal estate, a different situation might be presented. The object, however, is to avoid the proceedings pertaining to sale of the realty. If any debts were payable and the personal property was insufficient to discharge them, the Court's jurisdiction to direct sale of the lands attached. This was a question of fact to which the presumption must attach that the Court acted in compliance with law.

Affirmed.